# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

OMAR WILKINS,

        Petitioner,

vs.

NICK LUDWICK,

        Respondent.

No. C13-4024-MWB

*ORDER ON PENDING MOTIONS;*

*and*

*REPORT AND RECOMMENDATION
ON PETITION FOR WRIT OF
HABEAS CORPUS PURSUANT TO
28 U.S.C. § 2254*

## TABLE OF CONTENTS

I.    **INTRODUCTION**..................................................................... 2
    *A.*   *Factual Background* ............................................... 3
    *B.*   *Procedural Background* .......................................... 5
        *1.*   *State Court Proceedings*................................. 5
            *a.*   *Direct Appeal* ...................................... 5
            *b.*   *Post-conviction Relief Proceedings* ............................ 5
        *2.*   *Federal Proceedings* ..................................... 10

II.   **STANDARD OF REVIEW**............................................. 11

III.  **DISCUSSION**......................................................... 14
    *A.*   *Motion to Expand the Record and Motion to Add Supplemental Claim*........................................................ 14
    *B.*   *Motion to Strike Petitioner's Pro Se Reply Brief* .......................... 19
    *C.*   *Ineffective Assistance of Counsel Claims* .................................. 20
        *1.*   *Failure to Object to Prosecutor's Use of "O.J." Nickname at Trial* ...................................................... 20
        *2.*   *Failure to Investigate Information from Johnson and Call Him as a Witness*................................................... 26

IV.   **ORDER AND RECOMMENDATION**.............................................. 29

# I. INTRODUCTION

An Iowa District Court jury convicted Omar Wilkins (Wilkins) of first-degree felony murder on January 31, 2003. He was sentenced to a life term of imprisonment without the possibility of parole. The Iowa Supreme Court affirmed his conviction on direct appeal. *State v. Wilkins*, 693 N.W.2d 348 (Iowa 2005).

Wilkins then filed a state action for post-conviction relief (PCR), which was denied. The Iowa Court of Appeals affirmed that denial, *Wilkins v. State*, 820 N.W.2d 769 (Iowa Ct. App. July 11, 2012) (unpublished table decision), and the Iowa Supreme Court denied further review. The Clerk of the Iowa Court of Appeals issued the *procedendo,* signifying the conclusion of the PCR appeal, on September 6, 2012. Doc. No. 12-24.

On February 25, 2013, Wilkins filed a *pro se* petition (Doc. No. 1) for writ of *habeas corpus* in this court pursuant to 28 U.S.C. § 2254. Attorney Shelley Goff was appointed to represent him after a previous attorney withdrew from the case. Wilkins filed a merits brief (Doc. No. 21) on November 29, 2013, along with a motion to expand the record (Doc. No. 19) and a motion to add a supplemental claim (Doc. No. 20). I reserved ruling on the motions and stated they would be taken up with the merits of the petition. Doc. No. 28. I directed the respondent to proceed as if the proposed additional evidence and supplemental claim were part of the record and petition. *Id.* Respondent filed his merits brief (Doc. No. 38) on April 3, 2014. Wilkins filed a *pro se* reply (Doc. No. 39) on May 15, 2014. Respondent filed a motion to strike the *pro se* reply (Doc. No. 40) and Wilkins filed a *pro se* resistance (Doc. No. 43). Wilkins also submitted a reply brief through his attorney. (Doc. No. 41). I reserved ruling on the respondent's motion and indicated it would be taken up with the merits of the petition as well. Doc. No. 44. All matters are now fully submitted. The Honorable Mark W. Bennett, United States District Judge, has referred the habeas petition to me for preparation of a report and recommended disposition.

## A.    *Factual Background*

The Iowa Court of Appeals summarized the factual background of Wilkins's trial in its opinion on Wilkins's PCR appeal.    Absent rebuttal by clear and convincing evidence, I must presume that any factual determinations made by the Iowa courts were correct.    28 U.S.C. § 2254(e)(1); *see Bell v. Norris*, 586 F.3d 624, 630 (8th Cir. 2009) (a federal court must deem factual findings by the state court to be presumptively correct, subject to disturbance only if proven incorrect by clear and convincing evidence).    As no such rebuttal has been made, I adopt the following facts as determined by the Iowa Court of Appeals:

> On July 3, 2002, Myree Coleman Jr. drove his friend David Hayes to 1510 Jones Street, Sioux City, so Hayes could purchase crack cocaine from Omar Wilkins.
>
> Within hours, early in the morning of July 4, 2002, Hayes again asked for a ride so he could purchase more crack cocaine from Wilkins. Coleman again drove Hayes to Jones Street. During this outdoor transaction, Hayes flashed a wad of bills, a fight occurred, and Hayes was shot and killed. Coleman fled. At 2:24 a.m., the police were dispatched to a report of shots fired in the 1500 block of Jones Street. The officers found the murder weapon and Wilkins, Ezzard Woods, and Wayne Richard Edwards in Shirley Smith's house, 1507 Jones Street. Woods had a white cast on one arm. Alton Burden, Shirley Smith's son, was located nearby. Subsequently, Wilkins, Woods, Edwards, and Burden were arrested as material witnesses to the murder. Wilkins told the police he was not out of the house at the time of the shooting.
>
> Wilkins was charged with the murder of Hayes and in January 2003, his trial to a jury commenced. The testimony of Coleman, Woods, Edwards, Burden, and Smith supported the State's theory that Wilkins was the person who shot and killed Hayes. Michael Daniels, the upstairs tenant of 1510 Jones Street, testified he looked out his window when he heard a commotion, he didn't see the gun, but he saw the flash and the "flash came from where that white cast was."

Wilkins's attorney argued Woods, who had a white cast, shot Hayes. Wilkins's attorney attacked the credibility of Woods and Edwards, pointing out their favorable plea agreements. Further, Wilkins's attorney argued Smith's and Burden's testimony was suspect because Smith was admittedly intoxicated and Burden testified he had been high for two days at the time of the shooting. The attorney argued Coleman's testimony was unreliable because he drove away and was not interviewed by the police until the next day, July 5.

In February 2003, the jury, by special interrogatory answer, found Wilkins guilty of first-degree felony murder— underlying felony of second-degree robbery.

Wilkins appealed his conviction. On March 8, 2004, the appellate defender's office received the handwritten affidavit of Kevin Demale Johnson, stating:

> In August of 2002, I was being held in the Woodbury County Courthouse Jail in E. Block…. Alton Burton … was also in E. Block being held as a material witness to a murder. After me and Alton first met each other, we became real close and shared a lot of personal information.

Johnson's affidavit "purports to have heard some of the witnesses against the defendant concoct a conspiracy to convict him." *State v. Wilkins,* 693 N.W.2d 348, 352 (Iowa 2005). Additionally, this affidavit states Alton told Johnson that Edwards was the killer.

*Wilkins v. State*, 820 N.W.2d 769, at *1 (Iowa Ct. App. July 11, 2012) (unpublished table decision) [footnotes omitted].

## B.      Procedural Background

### 1.      State Court Proceedings

Wilkins was charged with first-degree murder under the alternative theories of having killed Hayes willfully, deliberately and with premeditation or while participating in a forcible felony. Wilkins went to trial where he was represented by Michael Williams of the Public Defender's Office. The jury returned a special verdict on January 31, 2003, finding Wilkins guilty of murder in the first degree under the felony murder theory.

#### a.      Direct Appeal

Wilkins appealed his conviction to the Iowa Supreme Court. He argued he was deprived of the right to fair trial and prejudiced by the court's denial of a challenge to a prospective juror and prosecutorial misconduct. *State v. Wilkins*, 693 N.W.2d 348 (Iowa 2005). Wilkins also presented the newly discovered evidence from Johnson. The court found that neither of Wilkins's claims warranted reversal of his conviction. It did not consider the claim based on the newly discovered evidence, but preserved the claim for PCR proceedings.

#### b.      Post-conviction Relief Proceedings

##### i.      Iowa District Court Decision

Wilkins filed his PCR petition on May 4, 2005. He argued ineffective assistance of counsel based on his trial counsel's (a) waiver of his right to a speedy trial without consulting him, (b) failure to properly investigate the case, (c) failure to properly cross-examine Zachary Chwirka, an expert witness, and (d) failure to either object or file a motion to prevent the use of his nickname, "O.J." at trial. Doc. No. 12-19 at 87-92. He also argued the newly discovered evidence from Johnson required his conviction and sentence to be reversed and vacated. *Id.*

The state filed a motion for summary judgment, which was granted on Wilkins's claims of ineffective assistance of counsel based on his trial counsel's (1) failure to properly investigate the case, (2) waiver of the speedy trial and (3) failure to prevent the use of the nickname "O.J." Doc. No. 12-19 at 112-15. Wilkins amended his petition and the district court held the PCR trial on July 22, 2009. The court considered the following ineffective assistance of counsel claims: (1) failure to investigate potential testimony of Johnson and call Johnson to testify at trial, (2) failure to adequately cross-examine expert witness Chwirka and (3) failure to request and/or object to several jury instructions. The court also considered a claim based on newly discovered evidence from Johnson. Because Wilkins appealed only from the district court's ruling as it related to Johnson, I will limit my discussion of that ruling accordingly.

The court noted that Johnson had provided two written statements. The first statement was prepared and signed after trial and was the basis of Wilkins's newly discovered evidence claim. The second statement appeared to have been prepared before Wilkins's trial, but it was unclear whether it had been provided to Williams before trial. Williams could not recall whether Wilkins had told him about the information from Johnson prior to trial. Johnson had apparently overheard conversations between Woods, Edwards and Burden in jail which suggested they agreed to tell the authorities that Wilkins was the shooter. At trial, Williams admitted this was information that he would normally follow up on. He testified that in evaluating whether to call a witness at trial, he considers the same factors a jury would consider in assessing that witness's credibility. Williams recalled there were some factors making Johnson a less-than-credible witness and in his experience, jailhouse conversations did not have significant weight and were generally unhelpful.

One snag in Williams's assessment was that the Kevin Johnson who provided the information was not the same "Kevin Johnson" Williams had in mind when he made his assessment. However, the court noted that many of the same factors would apply to the

Kevin Johnson who actually provided the information because he was a convicted felon in prison. The court also reasoned that Woods, Edwards and Burden had made statements to police prior to the jailhouse conversations identifying Wilkins as the shooter. These prior consistent statements could have been used to rebut Johnson's testimony and bolster the testimony of Woods, Edwards and Burden. The court concluded Wilkins had not demonstrated that a reasonably competent attorney would have or should have called Johnson to testify even after conducting a more thorough investigation.

The court also found Wilkins had failed to demonstrate prejudice. Again, it reasoned that Woods, Edwards and Burden had all identified Wilkins as the shooter prior to the "jailhouse" conversations. In addition, Coleman had also identified Wilkins as the shooter and he was not a part of the "jailhouse" group. Smith had also testified about Wilkins's admission following the shooting. Even without Johnson's testimony, Williams attacked the credibility of Woods, Edwards and Burden. For these reasons, the court concluded Wilkins had not demonstrated the verdict would have been different had Johnson testified.

As for Wilkins's claim regarding newly discovered evidence, the court first noted that it was questionable whether the information in Johnson's post-trial statement was really "newly discovered" evidence. Wilkins testified he had told Williams about Johnson's information. The court concluded Wilkins had not shown that the evidence could not have been discovered earlier in exercising due diligence. The court also found that the evidence was not material to the substantive factual issues, but was only impeachment evidence against Woods, Edwards and Burden. Again, the court concluded that Wilkins had not demonstrated prejudice because the evidence would not likely change the result if a new trial was granted. The court concluded that Wilkins had received a fair trial and that substantial evidence supported the verdict.

On appeal, the court considered Wilkins's claims of ineffective assistance of counsel for failure to request certain jury instructions and failure to investigate and present evidence based on Johnson's statement. The court agreed with the district court's analysis regarding the failure to request certain jury instructions and affirmed without further discussion. *Wilkins v. State*, 820 N.W.2d 769, at *1 n.1 (Iowa Ct. App. July 11, 2012) (unpublished table decision).

As for his counsel's alleged failure to further investigate the jailhouse conversations, the court found Wilkins had not demonstrated prejudice. It noted that Wilkins's defense at trial was that he was not the shooter. He attempted to prove this by discrediting the witnesses identifying him as the shooter and crediting the observations of Daniels, who identified Woods as the shooter. Johnson's testimony could have helped discredit the witnesses identifying Wilkins as the shooter. *Id.* at *2. The court considered Williams's testimony from the PCR trial in which he stated:

> [I]f it were brought to my attention that there was this alleged conspiracy, and I tend to believe it was brought to my attention, I would also have been fully cognizant of the relative times of other allegations against [Wilkins]; I would take that into account. But what I would have looked at as well is whether or not these three guys [Burden, Woods, Edwards] had a chance prior to the time of their statements to the police to cook up a story. But given that they would be talking about that in the jail sort of belies the conspiracy that would have been in existence prior to the time of their statements. So it was a bit of a fishy analysis as to trying to establish any particular reason why this [Johnson] allegation would carry enough weight that would be persuasive enough to the jury so it didn't look like we were just throwing stuff against the wall.

*Wilkins*, 820 N.W.2d at *3. The court then considered evidence that was presented at the criminal trial concerning the identity of the shooter. First, it considered the timing of witnesses' statements to the police compared to Johnson's affidavit. His affidavit was

allegedly based on conversations he overheard in jail in August 2002.[1]  The murder occurred on July 4, and police took statements from Woods, Edwards, Burden and Smith that day.  Burden identified Wilkins as the shooter and stated Woods was trying to break Wilkins away from Coleman and Hayes.  Coleman provided a statement on July 5 and also identified Wilkins as the shooter, which he confirmed in a sworn statement on July 11.  In his sworn statement, Coleman also stated he heard Wilkins tell Woods, "I shot the hell out of him."  Smith provided a sworn statement on July 8, stating Wilkins admitted "I just killed somebody," or "I just shot somebody."  Burden provided his sworn statement on July 19, which was consistent with his earlier statement that Wilkins was the shooter. Edwards provided his sworn statement on July 29.  He stated he was talking to Coleman when he heard the first shot.  When he looked over, Wilkins had the gun in his hand.  He went on to state, "The second shot I actually saw the gun in [Wilkins's] hand."  *Id.* at 5.  Woods provided his sworn statement on November 4.  He admitted he had retrieved the gun, but stated that Wilkins had taken it from him and pointed it at Hayes, shot it in the air once after Hayes tried to grab it and then shot Hayes.  Woods stated Wilkins then handed the gun over to Edwards, which is consistent with Edwards's statement on July 4.

The court then considered how Williams dealt with this evidence at the trial.  It noted that Williams attacked the credibility of Woods, Edwards and Burden during cross-examination and in closing argument.  The court then reasoned:

> While we conclude Johnson's testimony has the potential to impeach the testimony of Woods, Edwards, and Burden, we do not conclude Wilkins has proven he was prejudiced by defense counsel's breach of a duty to investigate. We are unable to conclude Johnson's potential testimony would likely change the result if a new trial were granted. The issue is whether Wilkins received a fair trial or was prejudiced. Importantly, Edwards and Burden *each* gave two consistent

[1] Johnson was in the Woodbury County Jail from roughly July 6-8, 2002 and July 22-October 9, 2002.  *Id.* at *3, n.5.

statements to the police that Wilkins fired the gun *prior to* any of the alleged August 2002 and later jailhouse conspiracy conversations. Additionally, Coleman was the victim's driver and is essentially a neutral witness not associated with Woods, Edwards, or Burden, and not identified as a part of the alleged jailhouse conspiracy. Coleman identified Wilkins as the shooter on July 5, the day after the shooting, and again on July 11, seven days after the shooting. Four days after the shooting, on July 8, Shirley Smith told the police Wilkins admitted shooting Hayes immediately after the event.

*Id.* at *5 [footnote omitted] [emphasis in original]. The court also noted that Johnson's testimony would not have corroborated Daniels's testimony that he saw the gun flash near the person with the cast (Woods). Johnson stated that Burden told him Edwards, not Woods, shot the gun, so Johnson's potential testimony would not have helped Wilkins's defense in this regard. The court concluded that based on the timing and consistency of the statements identifying Wilkins as the shooter prior to August 2002, the result of a new trial would likely not have been different had Johnson testified. *Id.* at *6.

### 2. *Federal Proceedings*

In his petition before this court, Wilkins asserted nine grounds for relief. Doc. No. 1 at 4-5. In his merits brief, Wilkins concedes that five of his claims have been procedurally defaulted or are not a basis for federal habeas relief. He has condensed some of the claims and also seeks to add a claim of ineffective assistance of counsel for failure to interview and call key witnesses for the defense. The claims addressed in his brief include: (1) ineffective assistance of counsel for failure to interview and call favorable witnesses at trial and (2) ineffective assistance of counsel for failure to object to the prosecution's use of Wilkins's nickname "O.J."

## II.    STANDARD OF REVIEW

Wilkins brings this petition pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Section 2254(a) provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under AEDPA, federal courts apply a "deferential standard of review" to the state court's determinations of law and fact if the state court adjudicated the claim on the merits.  *Taylor v. Bowersox*, 329 F.3d 963, 967-68 (8th Cir. 2003).  Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Wilkins brings his petition under section 2254(d)(1).  There are two categories of cases under this section that may provide a state prisoner with grounds for federal habeas relief: (1) if the relevant state-court decision was "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) if the relevant state-court decision "involved an *unreasonable application* of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (quoting 28 U.S.C. § 2254(d)(1)) [emphasis added].

A state court can violate the "unreasonable application" clause of section 2254(d)(1) in two ways: (a) where "the state court identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"; or (b) where "the State court either unreasonably extends a legal principle from [Supreme] Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

The state court reviews a post-conviction relief petition based on ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, the person challenging a conviction must show that (1) counsel provided deficient assistance to the extent that "counsel's representation fell below an objective standard of reasonableness" and (2) there was prejudice as a result. *Id.* at 688. The errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and the defendant was deprived of a fair trial. *Id.* at 687. The court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Federal habeas courts must then find that a state court's application of *Strickland* was unreasonable under section 2254(d) to grant habeas relief. This is also a highly deferential inquiry because "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785-86, 178 L. Ed. 2d 624 (2011). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788. Therefore, "even a strong case for relief does not mean the state court's contrary

conclusion was unreasonable." *Id.* at 786 (citing *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003)).

For a claim to be successful under section 2254(d)(1), "[i]t is not enough that the state court applied clearly established federal law erroneously or incorrectly—the application must additionally be unreasonable." *Jones v. Wilder-Tomlinson*, 577 F. Supp. 2d 1064, 1073 (N.D. Iowa 2008) (citing *Williams,* 529 U.S. at 411; *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) ("an unreasonable application is different from an incorrect one.")). *See Ringo v. Roper*, 472 F.3d 1001, 1003 (8th Cir. 2007) (same). "[A] federal court may not grant the petition unless the state court decision, viewed objectively and on the merits, cannot be justified under existing Supreme Court precedent." *Jones*, 577 F. Supp. 2d at 74 (citing *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999)); *see Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007) (to be overturned, the state court's application of federal law must have been "objectively unreasonable") (citing *Lyons v. Luebbers*, 403 F.3d 585, 592 (8th Cir. 2005)).

The petitioner bears the burden of showing that the state court's ruling on the claim presented was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87. "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)).

## III.   DISCUSSION

### A.   Motion to Expand the Record and Motion to Add Supplemental Claim

On the same day he filed his merits brief, Wilkins also filed motions (Doc. Nos. 19 and 20) to expand the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases and to add a supplemental claim.   Wilkins seeks to introduce the following documents:

> (1)   A Judgment and Order from the Iowa District Court for Woodbury County dated April 13, 2001, in State v. Myree Coleman
>
> (2)   Portion of a transcript from a videotaped interview of Wayne Edwards
>
> (3)   Letters from Ezzard Woods to Terrance Broughton dated September 9, 2002 and December 17, 2002
>
> (4)   Redacted police reports

Because this evidence all relates to Wilkins's proposed supplemental claim, I will first discuss whether the court can consider this claim before deciding whether the record can be expanded to include evidence in support of the supplemental claim.  Wilkins's motion to add a supplemental claim consists of five points covering approximately one page.  He did not submit a supporting brief or cite any law in support of his motion.  He simply argues the evidence was available to trial counsel in the police reports and that "[a]ny procedural default should be excused because, while the claim is obvious from a thorough review of the police reports and other evidence, post conviction counsel did not raise it." Doc. No. 20 at 2.  He uses the majority of his merits brief to address this claim and the evidence in support of it.

Respondent argues the supplemental claim should not be allowed based on the statute of limitations and procedural default.   He contends the one-year statute of limitations for habeas petitions began to run on September 5, 2012, and that the motion

to supplement filed on November 29, 2013, is untimely and does not relate back to the original petition. He argues the additional proposed claim is procedurally defaulted because it was not presented in state court and Wilkins has not demonstrated cause and prejudice or asserted that failure to consider the claim will result in a fundamental miscarriage of justice.

Wilkins addresses these arguments in his reply brief. Doc. No. 41. He contends the claim is not barred by the statute of limitations because respondent failed to calculate in the additional 90-day period from which Wilkins could have sought a writ of certiorari from the United States Supreme Court following the Iowa Supreme Court's order denying further review on September 4, 2012. Therefore, he concludes his additional claim would be timely because the statute of limitations actually expired on December 3, 2013.

The AEDPA statute of limitations provision states:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect

to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2). Wilkins's direct appeal was decided by the Iowa Supreme Court on March 11, 2005. The Eighth Circuit has described the calculation of the one-year statute of limitations as follows:

> The relevant triggering date for the statute of limitations is 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.' *Id.* § 2244(d)(1)(A). This provision permits prisoners time to seek direct review in the U.S. Supreme Court. *Smith v. Bowersox,* 159 F.3d 345, 347–48 (8th Cir. 1998). If a prisoner files a petition for certiorari, then his conviction becomes final upon 'the completion or denial of certiorari proceedings before the United States Supreme Court.' *Id.* at 348. If a prisoner does not petition the U.S. Supreme Court for review, then his conviction becomes final when the time for filing that petition expires, so long as the Supreme Court could have reviewed his direct appeal. *Riddle v. Kemna,* 523 F.3d 850, 855 (8th Cir. 2008). The time for filing a writ of certiorari in the U.S. Supreme Court is 90 days. Sup.Ct. R. 13.1. Therefore, the statute of limitations on a habeas petition begins running 90 days after a prisoner reaches the end of 'all direct criminal appeals in the state system.' *Bowersox,* 159 F.3d at 348. If, however, the Supreme Court lacked jurisdiction to review the direct appeal, then the statute of limitations begins to run immediately following the conclusion of the prisoner's direct appeal. *Riddle,* 523 F.3d at 855.

*Parmley v. Norris*, 586 F.3d 1066, 1069 (8th Cir. 2009). Wilkins did not file a petition for certiorari with the United States Supreme Court, so his conviction became final when the time for filing a petition expired – June 9, 2005. Wilkins filed his PCR application before that date though, on May 4, 2005, which tolled the statute of limitations. *See Walker v. Norris*, 436 F.3d 1026, 1029-30 (8th Cir. 2006) ("The statute of limitations is tolled . . . while a 'properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.'") (quoting 28 U.S.C.

16

§ 2244(d)(2)).   The statute is tolled during the entire time that PCR proceedings are pending in any state court, including the state appellate courts.  *Mills v. Norris*, 187 F.3d 881, 883-84 (8th Cir. 1999).   Therefore, when the Iowa Supreme Court denied further review of Wilkins's PCR application on September 4, 2012, and issued its *procedendo* two days later, the full one-year statute of limitations was then available for Wilkins to file his habeas petition in this court.   However, contrary to Wilkins's assertion, he is not allowed an additional 90-day period following the highest state court's decision on his post-conviction relief application.  *See Lawrence v. Florida*, 549 U.S. 327, 332 (2007) ("The application for state postconviction review is therefore not 'pending' after the state court's postconviction review is complete, and § 2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for certiorari."); *see also Snow v. Ault*, 238 F.3d 1033, 1035-36 (8th Cir. 2001) (holding § 2244(d)(2) does not toll the limitations period for the 90 days during which a petitioner could seek certiorari from a state court's denial of post-conviction relief).

The statute of limitations therefore expired on September 7, 2013 – one year after Wilkins's PCR proceedings concluded.   Wilkins filed his federal habeas petition well before that, on February 25, 2013.  This filing did not toll the statute of limitations period. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) ("We hold that an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C § 2244(d)(2).   Section 2244(d)(2) therefore did not toll the limitation period during the pendency of respondent's first federal habeas petition.").   Thus, because Wilkins's supplemental claim was not filed until November 29, 2013, it is untimely.

The statute of limitations may be equitably tolled if a petitioner can show that "(1) he has been diligently pursuing his rights and (2) an extraordinary circumstance stood in his way."  *White v. Dingle*, 616 F.3d 844, 847 (8th Cir. 2010) (citing *Holland v. Florida*, 560 U.S. 631 (2010)).   Wilkins does not assert any extraordinary circumstances that prevented him from raising this claim earlier.   Indeed, he asserts that the claim is

"obvious from a thorough review of the police reports and other evidence." Doc. No. 20 at 2.

The court may also hear an untimely claim if it "relates back to the date of the original pleading" under Federal Rule of Civil Procedure 15(c)(1)(B). That rule provides: "An amendment of a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The United States Supreme Court has clarified that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Mayle v. Felix*, 545 U.S. 644, 664 (2005).

Wilkins does not contend that his proposed additional claim arises out of the same conduct, transaction or occurrence described in his original petition. Respondent argues the proposed claim does not relate back to Wilkins's other ineffective assistance of counsel claims because none of his other claims are based on failure to investigate potential witnesses who might have helped his defense by identifying someone else as the shooter. I agree. Wilkins's proposed additional claim is unrelated to his other ineffective assistance of counsel claims, which attack his trial counsel's conduct regarding how he handled the evidence from Johnson and the prosecutor's use of Wilkins's nickname "O.J." at trial. These claims do not relate to pre-trial investigation of police reports for eyewitnesses who could have provided substantive evidence for Wilkins's defense. Wilkins's failure-to-investigate claim based on the information from Johnson is further distinguishable, as that information could only be used to discredit some of the state's witnesses. Because Wilkins's proposed additional claim is unrelated to his original pleading and was submitted outside the one-year statute of limitations, it is time-barred and his motions to add a supplemental claim and expand the record will be **denied.** This makes it unnecessary to address Wilkins's additional argument that any procedural default of his supplemental claim should be excused. *See Arthur v. Thomas*, 739 F.3d 611, 630

(11th Cir. 2014) ("[T]he *Martinez* rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not apply to AEDPA's statute of limitations or the tolling of that period.").

**B.**     ***Motion to Strike Petitioner's Pro Se Reply Brief***

Before addressing the merits of Wilkins's timely claims, I will consider respondent's motion (Doc. No. 40) to strike Wilkins's *pro se* reply (Doc. No. 39). Respondent argues Wilkins's *pro se* reply brief addresses issues outside his merits brief and he is not entitled to both self-representation and representation by counsel. Wilkins filed a *pro se* response (Doc. No. 43) in which he explained that he has been held to mistakes made by his previous attorneys and he submitted the *pro se* reply brief in an attempt to show his understanding of the proceedings. Wilkins is represented by counsel who filed a merits brief on November 29, 2013. Doc. Nos. 3, 21. Counsel also filed a reply brief on May 17, 2014. Doc. No. 41.

"Generally, it is Eighth Circuit policy to refuse to consider pro se filings when a party is represented by counsel." *Hoggard v. Purkett*, 29 F.3d 469, 472 (8th Cir. 1994) (citing *United States v. Hale*, 978 F.2d 1016, 1018 n.2 (8th Cir. 1992), *cert. denied*, 507 U.S. 887 (1993)). Defendants do not have a constitutional right to hybrid representation or the right to act as "co-counsel." *See United States v. Swinney*, 970 F.2d 494, 498 (8th Cir. 1992) ("[T]he district court may properly require the defendant to choose either to proceed *pro se*, with or without the help of standby counsel, or to utilize the full assistance of counsel."). Despite this general rule, I find no harm in considering Wilkins's *pro se* reply brief to the extent it addresses issues raised by his counsel in his merits brief and the reply brief filed by counsel. The other issues addressed in the *pro se* reply will not be considered. Therefore, respondent's motion (Doc. No. 40) will be **granted in part** and **denied in part.**

## C.    Ineffective Assistance of Counsel Claims

Wilkins claims his trial counsel was ineffective based on (1) his failure to object to the prosecutor referring to Wilkins by his nickname "O.J." at trial and (2) his failure to investigate the information from Johnson and call him as a witness at trial.[2]  I will address each of these claims separately below.

### 1.    Failure to Object to Prosecutor's Use of "O.J." Nickname at Trial

Wilkins does not specifically address why the state court's decision on this claim resulted in an unreasonable application of federal law.  He states:

> Disbaraging [sic] remarks by the prosecution should not have been allowed to continued [sic] by defense counsel.  In this case, not only did the prosecution use the nickname "O.J." repeatedly, but defense counsel started using it also.  The state court's denial of relief was based on the strong evidence against Wilkins as a basis for finding the misconduct did not make a difference.  However, as shown above, there was plenty of evidence to undermine the state's case which was not presented.  Viewing the failure to present favorable witnesses along side the disparaging remarks by the prosecution show that defense counsel was not acting as zealous counsel, something Wilkins was constitutionally entitled to.

Doc. No. 21 at 26.

Respondent argues to the extent this claim is framed as a "prosecutorial misconduct" claim as asserted in the petition as Ground 2, it is procedurally defaulted and must be dismissed.  However, he acknowledges that the Iowa Supreme Court

---

[2] In his merits brief, Wilkins only addresses the ineffective assistance of counsel claim concerning the prosecutor's use of his nickname at trial, along with his proposed supplemental claim.  Respondent argues that petitioner has therefore abandoned his claim concerning Johnson.  However, Wilkins raised that claim in his petition and did not explicitly abandon it in his merits brief.  To the extent Wilkins argues the Johnson claim and proposed supplemental claim are the same, I disagree for the reasons discussed *supra*, pp. 18-19.

addressed this argument as an ineffective assistance of counsel claim on direct appeal, which this court can review. Respondent also argues that Wilkins only asserts that the Iowa Supreme Court's decision was unreasonable when viewed in combination with evidence that was not presented. This evidence was the basis of Wilkins's motion to expand the record and add a supplemental claim, which I have denied. Moreover, as respondent correctly points out, I cannot consider the cumulative effect of claimed errors. *See Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006) (rejecting petitioner's argument that district court erred by individually analyzing prejudice for each claim and citing cases for proposition that a habeas petitioner "cannot build a showing of prejudice on a series of errors."). I will consider the Iowa Supreme Court's decision on this claim alone without consideration of the effects of other alleged errors to determine if the decision resulted in an unreasonable application of federal law.

In analyzing this claim, the Iowa Supreme Court found that while the prosecutor's references to "O.J." were "unnecessary and unprofessional," it did not result in prejudice that would warrant reversal of Wilkins's conviction. The court stated:

> We are unwilling to conclude that the jurors either individually or collectively would have been so neglectful of their responsibility that the prosecutor's references to defendant's nickname would sway their verdict in favor of the prosecution. We are confident that the jurors decided the case in keeping with the instructions of the court and based on the rather substantial testimony presented concerning the shooting of David Hayes.

*State v. Wilkins*, 693 N.W.2d 348, 352 (Iowa 2005). The court noted that to determine prejudice it had to consider "not only the severity and pervasiveness of the misconduct but also the significance of the misconduct with respect to the central issues in the case."[3] *Id.* (citing *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003)). It did not apply *Strickland*.

---

[3] This is the prejudice inquiry for a claim of prosecutorial misconduct.

A state court decision is "contrary to" clearly established federal law "if the state court 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases.'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1390 (2012). When a state court fails to apply the correct rule, its decision is contrary to clearly established federal law. *See id.* (finding that state appellate court correctly identified ineffective assistance of counsel claim, but failed to apply *Strickland*.). In this circumstance, the petitioner is entitled to "*de novo* consideration by the federal court of his or her underlying constitutional claim for post-conviction or habeas relief." *See Velazquez-Ramirez v. Fayram*, No. C12-4065-MWB, 2014 WL 523810, at *11 (N.D. Iowa Feb. 7, 2014) (citing cases for the proposition that when a state court's adjudication was contrary to federal law, the federal court should decide the claim directly under *Strickland* without AEDPA deference). Because the Iowa Supreme Court did not apply *Strickland* to Wilkins's ineffective assistance of counsel claim, its decision was contrary to clearly established federal law. *Lafler*, 132 S. Ct. at 1390. Therefore, I will consider this claim *de novo* under *Strickland*.

Under *Strickland*, the person challenging a conviction must show that (1) counsel provided deficient assistance to the extent that "counsel's representation fell below an objective standard of reasonableness" and (2) there was prejudice as a result. 466 U.S. at 688. The errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and the defendant was deprived of a fair trial. *Id.* at 687. The court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To establish *Strickland* prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* This requires a "substantial," not just "conceivable," likelihood of a different result. *Richter,* 131 S. Ct. at 791.

The Iowa Supreme Court summarized the evidence related to this issue as follows:

> It was established through the testimony of witnesses that O.J. was defendant's nickname. His own counsel even succumbed to referring to him in that manner on one occasion during the trial. . . . The prosecutor made it a point to tell the jury in his opening statement that defendant's nickname was "O.J.," although that fact was in no way material to any issue in the case. Throughout the trial, he referred to defendant as O.J. more than a dozen times and continued to call him by that name in making his closing argument to the jury.

*State v. Wilkins*, 693 N.W.2d 348, 351-52 (Iowa 2005). In his *pro se* reply brief, Wilkins contends the prosecutor referred to him as "O.J." over 150 times throughout trial and the jury was not given curative instructions. Doc. No. 39 at 10-14.

I have conducted my own review of the transcript and note the following references to defendant's nickname. On the first day of trial, the prosecutor read the trial information, which named Omar Rasheen Wilkins, a/k/a Michael Lamar Carter, a/k/a O.J. as the defendant. Doc. No. 12-1 at 30. In his opening statement, the prosecutor stated Wilkins went by "O.J." as a nickname and used an alias of Michael Carter, but otherwise referred to him as "the defendant." *Id*. at 31-38. He also provided the nicknames of other people involved in the case. *Id*. at 31-32. Coleman was the first witness to testify and he referred to the defendant as "Mike," "Michael" or "Omar" as did the prosecutor. Doc. No. 12-1 at 50-179, 12-2 at 8-46. The name "O.J." was not used during the testimony of the next two witnesses. Doc. No. 12-2 at 47-91. Shirley Smith was the next witness and she referred to the defendant as "O.J." and "Michael Williams." Doc. No. 12-2 at 92-98. She stated she did not know him by any other name. *Id*. at 98. Throughout her testimony, the prosecutor and defense counsel referred to the defendant as "O.J." *Id*. at 98-130. Edwards testified next and referred to the defendant as "O.J. Wilkins," and "O.J." *Id*. at 130-132, 140-41. The defendant was referred to primarily as "O.J." during his testimony but sometimes as Omar Wilkins or Mr. Wilkins. Doc. No. 12-2 at 141-72, 12-3 at 3-75. Defense counsel referred to the defendant as Mr. Wilkins during cross-examination. *Id*.

Several officers and a crime scene analyst were then called as witnesses and the name "O.J." did not come up during their testimony. Doc. No. 12-3 at 75-184. Alton Burden testified next using the names "O" and "O.J." and stating he had only recently learned the defendant's real name. Doc. No. 12-4 at 3-8. The prosecutor and defense counsel also referred to the defendant as "O" or "O.J." during Burden's testimony. Doc. No. 12-4 at 9-62. Woods was the final witness for the prosecution and he indicated he knew the defendant by the names "Omar Wilkins", "O.J." and "Michael Carter." Doc. No. 12-4 at 64-66. Throughout his testimony, the defendant was primarily referred to as "O.J." by the witness, prosecutor and defense counsel. *Id.* at 67-139, 141-44. The name "O.J." was not used in the testimony of any of the defense witnesses. *Id.* at 150-74, 177-214. In closing arguments, the prosecutor primarily referred to the defendant as "O.J." Doc. No. 12-5 at 11-28, 62-67. Defense counsel primarily referred to the defendant as Mr. Wilkins, except when discussing certain witnesses' testimony. Doc. No. 12-5 at 29-61.

The question I must consider is whether Wilkins's counsel's failure to object to use of the nickname "O.J." during trial amounted to ineffective assistance of counsel. Under *Strickland*, Wilkins must show that his counsel's performance was deficient and that it caused prejudice. 466 U.S. at 688. I find that even if the failure to object could be considered deficient performance, Wilkins is unable to demonstrate prejudice. *See id.* at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). Courts considering this issue in other circuits have considered "the relevance of the defendant's nickname and the frequency of its use by the prosecution in deciding whether a defendant was prejudiced." *United States v. Farmer*, 583 F.3d 131, 145 (2d Cir. 2009) (citing cases). They also consider "whether the name was 'necessarily suggestive of a criminal disposition.'" *Id.* (quoting *United States v. Dean*, 59 F.3d 1479, 1492 (5th Cir. 1995)). "[T]he suggestiveness of the nickname has not required exclusion, especially when it helped to identify the defendants, connect him to the crime, or prove other

24

relevant matter, or when coherent presentation of the evidence entailed passing reference to it." *Id.* at 146.

Courts have found that reference to the O.J. Simpson trial can give rise to certain concerns of prejudice. *See United States v. Lentz*, 58 F. App'x 961 (4th Cir. 2003) (upholding district court's ruling to exclude defendant's statements such as, "if O.J. can get away with it, so can I," under Rule 403 because the probative value was substantially outweighed by danger of unfair prejudice.); *State v. Thompson*, 578 N.W.2d 734, 743 (Minn. 1998) (noting that prosecutor's statements comparing defendant to O.J. served no purpose other than to attempt to impassion the jury). *But see United States v. Papajohn*, 212 F.3d 1112, 1121 (8th Cir. 2000) (finding prosecutor's fleeting comments comparing the defense to that used in the O.J. Simpson case were not "inflammatory to a degree that would require a mistrial"), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36, 64-69 (2004).

Here, the trial transcript indicates that use of the name "O.J." was primarily guided by witness testimony and used to identify the defendant. When a witness stated he or she knew the defendant as "O.J." the prosecutor and defense counsel also referred to the defendant as "O.J." to avoid confusion. Courts have failed to find prejudice under similar circumstances. *See United States v. Price*, 443 F. App'x 576, 579 (2d Cir. 2011) (finding that trial counsel's failure to object to defendant's nickname of "Crime" at trial did not result in prejudice under *Strickland* where witnesses knew defendant as "Crime" making it inevitable the nickname would be revealed to the jury). There was no reference to "O.J. Simpson" or an attempt by the prosecutor to compare Wilkins or his defense to Simpson's. While there was no specific jury instruction on this issue, the jury was instructed on what it could and could not consider. Doc. No. 12-19 at 26. The jury was instructed that it must base its verdict only on the evidence and the instructions that it had been given and that statements, arguments, questions and comments by the lawyers were not evidence. *Id.* The evidence included multiple witnesses' testimony and sworn statements to police that the defendant was the one who shot Hayes. For these reasons,

I find Wilkins has not demonstrated a reasonable probability that the result of his trial would have been different had his counsel objected to use of the nickname "O.J." at trial. Therefore, counsel's failure to object to the use of "O.J." does not amount to ineffective assistance of counsel under *Strickland*.

### 2. Failure to Investigate Information from Johnson and Call Him as a Witness

Wilkins does not argue why the Iowa Court of Appeals decision resulted in an unreasonable application of federal law on this claim. In his petition, Wilkins alleges the following:

> Trial counsel failed to investigate witness Kevin Johnson, who according to his own sworn affidavit had evidence which would have shown the state's star witnesses were conspiring to fabricate testimony against Wilkins (see sworn affidavit by Kevin Damale Johnson also trial counsel deposition).

Doc. No. 1 at 5. The Iowa Court of Appeals noted that Wilkins's defense at trial was to discredit the witnesses identifying him as the shooter while crediting the observations of Daniels. The evidence from Johnson indicated that while he was in jail, he heard Woods, Edwards and Burden concoct a conspiracy to identify Wilkins as the shooter. Wilkins argued his counsel breached a duty by failing to investigate the evidence (which he contends was provided to counsel in an affidavit) and he was prejudiced by the absence of Johnson's testimony at trial. *Wilkins v. State*, 820 N.W.2d 769 (Iowa Ct. App. 2012).

In considering this issue, the Iowa Court of Appeals first noted that Williams testified at the PCR trial that he had no specific recollection of conversations with Wilkins about Johnson or Wilkins requesting that Johnson be called as a witness. *Id.* Williams had also stated:

> [I]f it were brought to my attention that there was this alleged conspiracy, and I tend to believe it was brought to my attention, I would also have been fully cognizant of the relative times of other allegations against [Wilkins]; I would

take that into account. But what I would have looked at as
well is whether or not these three guys [Burden, Woods,
Edwards] had a chance prior to the time of their statements to
the police to cook up a story. But given that they would be
talking about that in the jail sort of belies the conspiracy that
would have been in existence prior to the time of their
statements. So it was a bit of a fishy analysis as to trying to
establish any particular reason why this [Johnson] allegation
would carry enough weight that would be persuasive enough
to the jury so it didn't look like we were just throwing stuff
against the wall.

*Id.* at *3. The court applied *Strickland* and considered whether Wilkins had demonstrated

prejudice from counsel's alleged failure to investigate and call Johnson as a witness. It

first considered the timing of the statements the state witnesses and alleged conspirators

had made to police. *Id.* It noted that "[a]ll but one of the pretrial witness statements

implicating Wilkins as the killer were made before the August 2002 timeframe specified

in the Johnson affidavit's first paragraph." *Id.* The court reasoned:

During trial, attorney Williams attacked the credibility of
Woods, Edwards, and Burden, the alleged jailhouse
conspirators, during cross-examination and during closing
argument. While we conclude Johnson's testimony has the
potential to impeach the testimony of Woods, Edwards, and
Burden, we do not conclude Wilkins has proven he was
prejudiced by defense counsel's breach of a duty to
investigate. We are unable to conclude Johnson's potential
testimony would likely change the result if a new trial were
granted. The issue is whether Wilkins received a fair trial or
was prejudiced. Importantly, Edwards and Burden *each* gave
two consistent statements to the police that Wilkins fired the
gun *prior to* any of the alleged August 2002 and later jailhouse
conspiracy conversations. Additionally, Coleman was the
victim's driver and is essentially a neutral witness not
associated with Woods, Edwards, or Burden, and not
identified as a part of the alleged jailhouse conspiracy.[6]
Coleman identified Wilkins as the shooter on July 5, the day
after the shooting, and again on July 11, seven days after the
shooting. Four days after the shooting, on July 8, Shirley

27

Smith told the police Wilkins admitted shooting Hayes immediately after the event.

We also note the upstairs-apartment witness's testimony is the gun's flash was near the person with the white cast, i.e., Woods. Therefore, Johnson's potential testimony would not support this defense theory because Johnson states Alton Burden told him Edwards, not Woods, shot the gun.

Given the timing and consistency of the numerous statements to the police identifying Wilkins as the shooter prior to August 2002, we conclude granting Wilkins a new trial to include the testimony of Kevin Johnson would not likely produce a different result. Wilkins has failed to prove the prejudice prong of his ineffective-assistance claim.

*Id.* at *5-6.

Because the Iowa Court of Appeals identified *Strickland* as the correct governing law, I must decide whether the application of *Strickland* was unreasonable under section 2254. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 131 S. Ct. at 788. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

I find that the Iowa Court of Appeals reasonably applied *Strickland* in concluding Wilkins had not demonstrated prejudice from his counsel's failure to investigate information from Johnson and call him as a witness at trial. The court acknowledged that Johnson's testimony would have only provided an additional basis to discredit three of the state's witnesses. It also suggested that it would have been difficult for the jury to credit Johnson's testimony because Edwards and Burden had each provided prior consistent statements to police that Wilkins was the shooter before any of the jailhouse conversations Johnson overheard in August 2002. Moreover, Coleman and Smith (who

were not parties to the jailhouse conversations) identified Wilkins as the shooter shortly after the event. Finally, the court also reasoned that Johnson's testimony would have been inconsistent with Wilkins's defense theory because Burden allegedly told him Edwards, not Woods, shot the gun. I find it was reasonable for the court to conclude under *Strickland* that Johnson's testimony likely would not have changed the jury's verdict and therefore, that Wilkins suffered no prejudice.

## IV.    ORDER AND RECOMMENDATION

Based on the foregoing:

1.    Wilkins's motion to expand the record (Doc. No. 19) and motion (Doc. No. 20) to add a supplemental claim are **denied**.

2.    Respondent's motion (Doc. No. 40) to strike petitioner's *pro se* reply brief is **granted in part** and **denied in part**. That brief is hereby deemed **stricken** to the extent it addresses issues not raised in the briefs filed by Wilkins's counsel.

3.    I **respectfully recommend** that Wilkins's petition pursuant to 28 U.S.C. § 2254 (Doc. No. 1) be **denied**. Objections to this recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 21st day of July, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE