**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

OMAR R. WILKINS,

    Petitioner,

vs.

NICK LUDWICK,

    Respondent.

No. C 13-4024-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING REPORT AND
RECOMMENDATION ON PETITION
FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254**

_____

**TABLE OF CONTENTS**

*I.*    ***INTRODUCTION*** ............................................................................ *2*
     *A.*    *Procedural Background* ......................................................... *2*
     *B.*    *The Report And Recommendation* ............................................ *3*
*II.*    ***LEGAL ANALYSIS*** ........................................................................ *5*
     *A.*    *The Motion To Strike* ............................................................ *5*
     *B.*    *Standards For Review Of A Report And Recommendation* ............... *6*
     *C.*    *Standards For Federal Habeas Relief* ........................................ *9*
     *D.*    *Review Of The Recommended Disposition Of Wilkins's
          Claims* ............................................................................ *12*
          *1.*    *The "nickname" claim* ................................................. *12*
          *2.*    *The "shooter identification" witness* ............................... *14*
*III.*    ***CONCLUSION*** ........................................................................... *16*

## I. INTRODUCTION
### A. Procedural Background

In this action, petitioner Omar Wilkins seeks federal *habeas corpus* relief, pursuant to 28 U.S.C. § 2254, from his January 31, 2003, conviction and life sentence in Iowa court for first-degree felony murder for the shooting of David Hayes during a drug transaction on July 3, 2002. Wilkins's claims for relief, as condensed, clarified, and briefed by appointed counsel and considered by the magistrate judge to whom I referred the case, are the following: (1) ineffective assistance of counsel for failure to object to the prosecution's use of Wilkins's nickname "O.J."; and (2) ineffective assistance of counsel for failure to investigate information from and to call as a witness Kevin Johnson, whom Wilkins contends would have testified that, while Johnson was in jail, Johnson overheard persons present at Hayes's shooting who were in jail with him conspire to identify Wilkins as the shooter. By Order (docket no. 16), filed October 28, 2013, I referred this entire action, including all pending motions, to United States Magistrate Judge Leonard T. Strand for review of the record and the pleadings, the conduct of any necessary evidentiary hearing, the hearing of any oral argument that might be necessary, and the submission to me of a report and recommended disposition of the case.

On July 21, 2014, Judge Strand filed his Order On Pending Motions And Report And Recommendation On Petition For Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (docket no. 45). After an extension of time to do so, Wilkins's appointed counsel filed "Objections To Magistrates [sic] Report And Recommendations" (docket no. 48) on August 15, 2014. On August 25, 2014, the respondent filed a Response To Petitioner's Objections To Report And Recommendation (docket no. 49). On August 27, 2014, the Clerk of Court received and filed Wilkins's "Pro-se Objections To Magistrates [sic] Report And Recommendations" (docket no. 50), which were postmarked August 25, 2014. On August 27, 2014, the respondent filed a Motion To Strike Petitioner's Pro

Se Brief (docket no. 51), relating to Wilkins's *pro se* Objections. Wilkins filed no timely response to the respondent's Motion To Strike. Thus, the time is ripe for my review of Judge Strand's Report And Recommendation pursuant to 28 U.S.C. § 636.

### B. The Report And Recommendation

In his Report And Recommendation, Judge Strand first considered Wilkins's claim of ineffective assistance of trial counsel concerning the prosecution's use of Wilkins's nickname "O.J." Judge Strand concluded that, on direct appeal of Wilkins's conviction, the Iowa Supreme Court had applied a standard applicable to misconduct of a prosecutor to this claim, not the standard for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), which was contrary to clearly established federal law. Report And Recommendation at 21-22. Thus, Judge Strand reviewed this claim *de novo* under the *Strickland* standard, by conducting his own review of the transcript. *Id*. Judge Strand noted that the prosecutor used "O.J." to identify Wilkins well over 100 times in his examination or cross-examination of numerous witnesses. *Id*. at 22-24. He then concluded that, even if the failure of trial counsel to object to these uses of "O.J." could be considered deficient performance, Wilkins had failed to demonstrate prejudice, as required to obtain relief under Strickland. *Id*. at 24. Judge Strand took note of various decisions finding that use of references to O.J. Simpson, to "getting away with it" like O.J. Simpson, or to other comparisons of criminal defendants to O.J. Simpson were prejudicial. He distinguished these cases, however, on the ground that, in Wilkins's case, "the trial transcript indicates that use of the name 'O.J.' was primarily guided by witness testimony and used to identify the defendant," for example, when a witness stated that he or she knew Wilkins as "O.J.," so use of the nickname was "to avoid confusion." Judge Strand also noted that there were no attempts by the prosecutor to compare Wilkins or his defense to O.J. Simpson or O.J. Simpson's defense. *Id*. at 24-25.

3

Furthermore, Judge Strand recognized that there was no specific jury instruction on this issue, but he observed that the jury was instructed on what it could and could not consider, including instructions that the jury must base its verdict only on the evidence and the instructions that were given, not on statements, arguments, questions, or comments by the lawyers. *Id*. at 25. Judge Strand also noted that the evidence included multiple witnesses' testimony and sworn statements to police that Wilkins was the one who shot Hayes. *Id*.

On this claim, Judge Strand ultimately concluded,

> For these reasons, I find Wilkins has not demonstrated a reasonable probability that the result of his trial would have been different had his counsel objected to use of the nickname "O.J." at trial. Therefore, counsel's failure to object to the use of "O.J." does not amount to ineffective assistance of counsel under *Strickland*.

Report And Recommendation at 25-26.

Judge Strand next considered Wilkins's claim of ineffective assistance of trial counsel based on his failure to investigate information from and to call as a witness Kevin Johnson, whom Wilkins contends would have testified that, while Johnson was in jail, he overheard persons who were present at Hayes's shooting, who were in jail with him, conspire to identify Wilkins as the shooter. Judge Strand concluded that, because the Iowa Court of Appeals had identified *Strickland* as the standard applicable to this claim, on Wilkins's appeal of denial of his petition for state post-conviction relief, the state court had used the correct governing standard. Thus, he concluded that the question was whether the state court's application of *Strickland* was unreasonable under § 2254. Report And Recommendation at 28. Judge Strand concluded,

> I find that the Iowa Court of Appeals reasonably applied *Strickland* in concluding Wilkins had not demonstrated prejudice from his counsel's failure to

4

> investigate information from Johnson and call him as a witness at trial. The court acknowledged that Johnson's testimony would have only provided an additional basis to discredit three of the state's witnesses. It also suggested that it would have been difficult for the jury to credit Johnson's testimony because Edwards and Burden [two other witnesses present at the time of the shooting] had each provided prior consistent statements to police that Wilkins was the shooter before any of the jailhouse conversations Johnson overheard in August 2002. Moreover, Coleman and Smith (who were not parties to the jailhouse conversations) [but were also present at the time of the shooting] identified Wilkins as the shooter shortly after the event. Finally, the court also reasoned that Johnson's testimony would have been inconsistent with Wilkins's defense theory because Burden allegedly told him Edwards, not Woods, shot the gun. I find it was reasonable for the court to conclude under *Strickland* that Johnson's testimony likely would not have changed the jury's verdict and therefore, that Wilkins suffered no prejudice.

Report And Recommendation at 28-29.

## II. LEGAL ANALYSIS

### A. The Motion To Strike

Before discussing the standards applicable to review of Judge Strand's Report And Recommendation, I must briefly address the respondent's Motion To Strike, in which the respondent asks me to strike Wilkins's *pro se* objections. The respondent asserts that Wilkins is not entitled to "hybrid" representation and that courts generally disregard *pro se* filings from parties represented by counsel. The respondent also argues that Wilkins's *pro se* objections are untimely.

The respondent is right on both grounds. First, courts, including the Eighth Circuit Court of Appeals, generally do not accept or consider *pro se* briefs or filings

when a party is represented by counsel. *See, e.g., Anderson v. United States*, ___ F.3d ___, ___, 2014 WL 3882885, *6 (8th Cir. Aug. 8, 2014); *United States v. Pate*, 754 F.3d 550, 553 (8th Cir. 2014); *United States v. McIntosh*, 492 F.3d 956, 961 n.2 (8th Cir. 2007). Second, Wilkins's *pro se* objections are untimely. The time for objections runs from the service of the Report And Recommendation. *See* Report And Recommendation at 29. In this case, service happened immediately on filing of the Report And Recommendation, when Wilkins's counsel was notified of the filing by the CM/ECF electronic filing system, not from the date that Wilkins eventually received a copy, at least where Wilkins is represented by counsel. Wilkins's attorney obtained an extension only until August 15, 2014, to file objections. *See* Order (docket no. 47). Wilkins's *pro se* objections were not mailed until August 25, 2014, or received and filed until August 27, 2014, well beyond the additional 3 days tacked on to deadlines for "mailing time" still provided under Rule 6(b) of the Federal Rules of Civil Procedure and N.D. IA. L.R. 6, even after the institution of the electronic filing system.

Consequently, I have not considered Wilkins's *pro se* objections, but I find it unnecessary to strike them from the record.

### B. *Standards For Review Of A Report And Recommendation*

As to review by a district judge of a magistrate judge's ruling, the applicable statute expressly provides for *de novo* review *when objections are made*, as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). The United States Supreme Court has explained that the statutory standard does not preclude review by the district court in other circumstances, however:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, the specific standard of review may depend upon whether or not a party has objected to portions of the report and recommendation.

*Where, as here, a party files an objection to a magistrate judge's report and recommendation*, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (emphasis added). In most cases, to trigger *de novo* review, "objections must be timely and specific." *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990). However, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general *pro se* objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and has also been willing to conclude that general objections require "full de novo review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a de novo review would still have been appropriate given such a concise record.").

7

When objections have been made, and the magistrate judge's report is based upon an evidentiary hearing, "'the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing.'" *United States v. Azure*, 539 F.3d 904, 910 (8th Cir. 2008) (quoting *Jones v. Pillow*, 47 F.3d 251, 252 (8th Cir. 1995), in turn quoting *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989)). Judge Strand did not hold an evidentiary hearing on Wilkins's § 2254 Petition or hear oral arguments on the merits of Wilkins's claims. Instead, he considered only the parties' written submissions, and I have done the same.[1]

---

[1] *In the absence of an objection*, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150; *see also Peretz v. United States*, 501 U.S. 923, 939 (1991) (stating that § 636(b)(1) "provide[s] for de novo review only when a party objected to the magistrate's findings or recommendations" (emphasis added)); *United States v. Ewing*, 632 F.3d 412, 415 (8th Cir. 2011) ("By failing to file objections, Ewing waived his right to de novo review [of a magistrate judge's report and recommendation on a suppression motion] by the district court."). A district court *may* review *de novo* any issue in a magistrate judge's report and recommendation at any time, even if no objections were made. *Id.* at 154. This discretion to conduct *de novo* review of any issue at any time makes sense, because the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). On the other hand, *Thomas* suggests that no review at all is required in the absence of any objections. *Id.* at 150 ("We are therefore not persuaded that [§ 636(b)(1)] requires some lesser review by the district court when no objections are filed.").

Nevertheless, the Eighth Circuit Court of Appeals has indicated that a district court should review the portions of a magistrate judge's report and recommendation to which no objections have been made under a "clearly erroneous" standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that, when no objections are filed and the time for filing objections has expired, "[the district court judge] would

I will review Judge Strand's Report And Recommendation with these standards in mind.

### C. *Standards For Federal* Habeas *Relief*

In reviewing Judge Strand's Report And Recommendation, I must also keep in mind the standards for federal *habeas* relief to a state prisoner. Since the passage of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), *habeas* review by the federal courts of state court convictions and the state courts' denials of post-conviction relief, pursuant to 28 U.S.C. § 2254, is limited and, at least ordinarily, deferential. Specifically, if a claim has been "adjudicated on the merits in State court," a federal habeas court may not grant relief unless "the adjudication of the claim . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in

---

only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting that the Advisory Committee's Note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). Review for clear error, even when no objection has been made, is also consistent with "retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk*, 15 F.3d at 815. Although the Eighth Circuit Court of Appeals has not explained precisely what "clear error" review means in this context, in other contexts, the Supreme Court has stated that the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). This standard of review will only come into play to the extent that I review findings to which Wilkins has not objected.

9

light of the evidence presented in the State court proceeding." *Johnson v. Williams*, ___ U.S. ___, ___, 133 S. Ct. 1088, 1091 (2013) (quoting § 2254(d) (citations and quotation marks omitted)). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. ___, ___, 131 S.Ct. 1388, 1398 (2011). As a consequence of the limitations on relief under § 2254(d)(1), "[t]he starting point for cases subject to § 2254(d)(1) is to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." *Marshall v. Rodgers*, ___ U.S. ___, ___, 133 S. Ct. 1446, 1449 (2013); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). "Clearly established law" means "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" *Howes v. Fields*, ___ U.S. ___, ___, 132 S. Ct. 1181, 1187 (2012) (quoting *Williams*, 529 U.S. at 412)). The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." *Williams*, 529 U.S. at 405.

A state court decision is "contrary to" clearly established federal law, within the meaning of § 2254(d)(1), "if the state court 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases.'" *Lafler v. Cooper*, ___ U.S. ___, ___, 132 S. Ct. 1376, 1390 (2012) (quoting *Williams*, 529 U.S. at 405)). "A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 406. A federal court's belief that it might have reached a different result is not enough to show that the state court decision was "contrary to" established federal law, where the state court applied the correct standard under established Supreme Court law. *Id*. A state court's decision involves an "unreasonable application" of federal law, within the meaning of § 2254(d)(1), if "'there was no reasonable basis for' the [state court's]

decision." *Cullen*, ___ U.S. at ___, 131 S. Ct. at 1402 (quoting *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 786 (2011)).  Thus, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'"  *Richter*, 562 U.S. at ___, 131 S. Ct. at 785 (emphasis in the original) (quoting *Williams*, 529 U.S. at 410).

Even if a petitioner establishes that the state court's determination was "contrary to" or an "unreasonable application of" federal law, within the meaning of § 2254(d)(1), that determination does not, standing alone, entitle the petitioner to relief.  Rather, it only entitles the petitioner to *de novo* consideration by the federal court of the petitioner's underlying constitutional claim for post-conviction or *habeas* relief.  *See Johnson*, ___ U.S. at ___, 133 S. Ct. at 1097 ("Even while leaving 'primary responsibility' for adjudicating federal claims to the States, AEDPA permits de novo review in those rare cases when a state court decides a federal claim in a way that is 'contrary to' clearly established Supreme Court precedent." (internal citations omitted)); *Lafler*, ___ U.S. at ___, 132 S. Ct. at 1390-91 (holding that, where the state court's decision was "contrary to" clearly established federal law, because it failed to apply the *Strickland* standards to an ineffective assistance of counsel claim, the federal court "can determine the principles necessary to grant relief" and apply them to the facts of the case); *Richter*, ___ U.S. at ___, 131 S. Ct. at 770 (stating that § 2254(d)(1)'s exception "permit[s] relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law"); *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (stating that, when the state court's adjudication was "contrary to" Federal law, within the meaning of § 2254(d)(1), "[a] federal court must then resolve the claim without the deference AEDPA otherwise requires"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (performing the analysis required under *Strickland*'s "prejudice" prong without deferring to the state court's decision, because the state court's resolution of *Strickland*'s "deficient

performance" prong involved an "unreasonable application" of federal law, and the state court had considered the "deficient performance" prong dispositive).

### D. Review Of The Recommended Disposition Of Wilkins's Claims

#### 1. The "nickname" claim

Here, Judge Strand applied *de novo* review to Wilkins's claim of ineffective assistance related to use of the nickname "O.J.," because the Iowa Supreme Court had applied the wrong standard to that claim, a prosecutorial misconduct standard rather the ineffective assistance of counsel standard in *Strickland*. Report And Recommendation at 21-22. Wilkins does not assert that doing so was error, and I find that not only did Judge Strand not clearly err on this point, he was indubitably correct. *See Grinder*, 73 F.3d at 795 (clear error review applies when no objections are made); *see also Lafler*, ___ U.S. at ___, 132 S. Ct. at 1390-91 (holding that, where the state court's decision was "contrary to" clearly established federal law, because it failed to apply the *Strickland* standards to an ineffective assistance of counsel claim, the federal court "can determine the principles necessary to grant relief" and apply them to the facts of the case).

Wilkins objects[2] to just about every aspect of Judge Strand's *de novo* consideration of this claim, however, requiring me to make a *de novo* review of Judge Strand's *de novo* review of Wilkins's claim. In essence, Wilkins contends that Judge Strand's recommended disposition of this claim is wrong, because the record clearly shows that all witnesses who used the nickname "O.J." to identify Wilkins at trial also knew him by

---

[2] Because I will not consider Wilkins's *pro se* objections, all references to "Wilkins's objections" in the remainder of this decision refer to Wilkins's *counsel's* objections.

12

other, "non-prejudicial" names; in the prosecutor's examination or cross-examination of particular witnesses, the prosecutor often referred to Wilkins as "O.J." before establishing whether that was a name by which the witness knew Wilkins; not counting witness usage, Wilkins was identified as "O.J." more than 300 times during the trial, and at least 66 times by his defense counsel. Thus, Wilkins argues that the use of "O.J." to identify him was not fleeting, or just a couple of statements referring to "O.J.," but a steady "drumbeat" of "O.J.," "O.J.," "O.J.," so incessant and so invasive that even defense counsel fell into the trap of referring to his client as "O.J." He argues that using the nickname "O.J." had no probative value, at least none over using his actual name, and that using his nickname incessantly was prejudicial, because it undermined his plausible defense that someone else shot Hayes by inflammatory references to an infamous murder case in which the prime suspect is generally believed to have "gotten away with murder."

There are several flaws in Wilkins's objections. First, "O.J." was, in fact, Wilkins's nickname and one of the names by which witnesses most often knew him. Second, using a consistent reference for a defendant for identity purposes would have aided the jurors in following the evidence and testimony in the case. Third, Wilkins still has not identified any use of "O.J." that directly or impliedly likened him to O.J. Simpson or likened his defense to "getting away with it" like many people believe that O.J. Simpson did. Fourth, notwithstanding the notoriety of the O.J. Simpson case, I cannot conclude that referring to a defendant whose commonly recognized nickname was "O.J.," without ever attempting to relate that nickname to O.J. Simpson or his entanglements with criminal law, is anywhere near as inherently prejudicial as a nickname like "Murder," *see United States v. Farmer*, 583 F.3d 131, 146 (2d Cir. 2009), or "Crime," *see United States v. Price*, 443 F. App'x 576, 579 (2d Cir. 2011), to which Wilkins likens use of his nickname in his case. As used in this case, "O.J." was not

simply an irrelevant nickname used to suggest a defendant's bad character or unsavory proclivities, but a nickname properly used to clarify the identity of the defendant as the person to whom witnesses were referring, so that it was not prejudicial. *See, e.g., United States v. Delpit*, 94 F.3d 1134, 1146 (8th Cir. 1996) (indicating when use of nicknames or aliases may be unduly prejudicial). Fifth, even if the evidence against Wilkins was not overwhelming, as he claims—and I do not necessarily agree with him—upon *de novo* review, I agree with Judge Strand that Wilkins has not demonstrated a reasonable probability that the result of his trial would have been different if his counsel had objected to use of the nickname "O.J." to identify him, and this ineffective assistance of counsel claim fails under *Strickland*. *See Strickland*, 466 U.S. at 694 (explaining that, to establish the required prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"); *see also Richter*, 562 U.S. at ___, 131 S. Ct. at 791 (explaining that a "reasonable probability" requires a "substantial," not just "conceivable," likelihood of a different result).

I accept Judge Strand's recommended disposition of this claim.

### 2. *The "shooter identification" witness*

Wilkins also objects to Judge Strand's recommended disposition of his claim of ineffective assistance of counsel for failure to investigate information from and to call as a witness Kevin Johnson, whom Wilkins contends would have testified that, while Johnson was in jail with persons who had been present at Hayes's shooting, Johnson overheard them conspire to identify Wilkins as the shooter. Wilkins objects to Judge Strand's conclusion that the rejection of this claim by the Iowa Court of Appeals was a reasonable application of federal law, specifically, *Strickland*, because even if counsel performed deficiently, Wilkins could not show the required prejudice. Wilkins argues that the problem with the decision of the Iowa Court of Appeals is that it does not

adequately take into account that the veracity of the state's witnesses had already been called into question by Michael Daniel's unbiased eyewitness testimony that it was Wood, someone actually testifying for the state, not Wilkins, who shot Hayes. Wilkins argues that Johnson would have added weight to that testimony and it is a reasonable probability that this would have tipped the weight of the evidence in Wilkins's favor.[3]

After *de novo* review, I agree with Judge Strand's conclusions that the Iowa Court of Appeals did not unreasonably conclude that Wilkins had not demonstrated prejudice from his counsel's failure to investigate information from Johnson and to call Johnson as a witness at trial. *See Cullen*, ___ U.S. at ___, 131 S. Ct. at 1402; *see also Richter*, 562 U.S. at ___, 131 S. Ct. at 785 (explaining that "'an unreasonable application of federal law is different from an incorrect application of federal law'" (emphasis in the original) (quoting *Williams*, 529 U.S. at 410)). The Iowa Court of Appeals acknowledged that Johnson's testimony would have only provided an additional basis to discredit three of the state's witnesses; suggested that it would have been difficult for the jury to credit Johnson's testimony because Edwards and Burden, two other witnesses present at the time of the shooting, had each provided prior consistent statements to police that Wilkins was the shooter before any of the jailhouse conversations Johnson overheard in August 2002; recognized that Coleman and Smith, who were not parties to the jailhouse conversations, but who were also present at the time of the shooting, identified Wilkins as the shooter shortly after the event; and reasoned that Johnson's testimony would have

---

[3] There is some merit to the respondent's argument that Wilkins's counsel marshaled different arguments to attack Judge Strand's recommended disposition than counsel did to support Wilkins's claim in the first instance. I find that it makes no difference whether I consider Wilkins's counsel's "old" or "new" arguments, because none of them demonstrate that the decisions of the Iowa courts on this claim were unreasonable.

15

been inconsistent with Wilkins's defense theory, because Burden allegedly told Johnson that Edwards, not Woods, shot Hayes. Upon *de novo* review, I conclude that the Iowa Court of Appeals did not unreasonably conclude that Johnson's testimony likely would not have changed the jury's verdict and, therefore, that Wilkins suffered no prejudice, as required for relief under *Strickland*. *See Strickland*, 466 U.S. at 694 (explaining that, to establish the required prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"); *see also Richter*, 562 U.S. at ___, 131 S. Ct. at 791 (explaining that a "reasonable probability" requires a "substantial," not just "conceivable," likelihood of a different result).

I accept Judge Strand's recommendation to deny this claim for federal *habeas* relief.

### III.  CONCLUSION

Upon the foregoing, I conclude, as follows:

1.  The respondent's August 27, 2014, Motion To Strike Petitioner's Pro Se Brief (docket no. 51), relating to Wilkins's pro se Objections (docket no. 50), is **granted** to the extent that I have not considered Wilkins's pro se Objections, because Wilkins is represented by counsel and/or because his *pro se* Objections are untimely, but I find it unnecessary to strike them from the record;

2.  I **overrule** Wilkins's counsel's August 15, 2014, "Objections To Magistrates [sic] Report And Recommendations" (docket no. 48);

3.  I **accept** Judge Strand's July 21, 2014, Report And Recommendation On Petition For Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (docket no. 45) to **deny** Wilkins's petition pursuant to 28 U.S.C. § 2254;

4. Wilkins's February 25, 2013, Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (docket no. 1), as subsequently supplemented, clarified, or amended, is **denied**; and

5. The Clerk of Court **shall enter judgment** accordingly.

**IT IS SO ORDERED**.

**DATED** this 6th day of October, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA